The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention for the court is now setting. God save the United States and its Honorable Court. All right, thank you. Please be seated. All right, Marquez v. Bondi and we'd be delighted to hear from you, Ms. Diaz. Thank you very much. Good morning and may it please the Court. My name is Madeline Taylor Diaz. I represent Carlos Ramos Marquez. In his petition for review of a decision from the Board of Immigration Appeals denying his applications for withholding of removal under the INA and protection under the Convention Against Torture and ordering him removed to Honduras. Now, we identify three issues before the Court today. The first is whether or not the petitioner established that the Honduran government is unable and or unwilling to protect him from MS-13. The second, whether the petitioner could avoid persecution by relocating and whether or not relocation would be reasonable. And the third final issue is whether the petitioner established that there's a clear probability that he would be tortured upon return to Honduras with the acquiescence of the Honduran government. So I'd like to begin with that first issue, unable and unwilling. We identify four main grounds for this Court to vacate the agency's decision as it relates to unable and unwilling and I'll take them in turn. The first and perhaps the most important is that the IJA in this case and the BIA as well implemented a per se reporting requirement. The IJA based her conclusion in part and primarily on petitioner's failure to report the threats and assaults he endured to the Honduran police. However, of course, in both Oriana V. Barr as well as Portillo Flores v. Garland on Bonk, a reporting is not required when doing so would either be futile or it would have subjected him or her to further abuse. And of course, that's from Oriana V. Barr. It was, therefore, legal error for the immigration judge to have concluded that the petitioner didn't meet his burden simply because he didn't report those incidents to the police. The immigration judge's decision didn't go further into the futility of having reported. Why don't we just look at the ultimate question because as a petitioner you're required to establish all the elements of your claim. Why wouldn't we just look at the IJA and the BIA's finding with respect to whether the Honduran government was unwilling or unable to control the gang members? That's the ultimate finding. Yes, Your Honor. And that's something you have to establish. Yes, Your Honor. And of course, I do believe that there is substantial evidence on the record which should have supported a conclusion that the government of Honduras was not able or willing and that the IJA largely distorted and disregarded that testimony. And a few of those instances would be Mr. Ramos Marquez explicitly testifying that the government is corrupt and won't protect him, testimony that was found credible, that gangs learn when you file a report and that's why they're afraid to report them. He testified that his sister made a police report after MS-13 gang members went to her home and threatened her. The police didn't help her and she was forced to go into hiding. He also explained that police have, quote, done nothing to investigate the death of his brothers and that he never saw the police arrest anyone full stop. And that's it. Is there country condition evidence to support petitioners' fear that the gang would find out where he was?  Absolutely, Your Honor, there is. There was a handful of different country conditions evidence which we cited in our brief and which I can go over again here that was largely disregarded or either selectively considered by the immigration judge, which of course is legal error under Portillo-Flores. For example, Your Honor, court's indulgence, the IJ cited in her determination that there have been, quote, some arrests under the state of emergency which began in December 2022. However, in that exact same article, the author goes on to state that victims of extortion only say they've only changed how it is that money's collected, demonstrated that the state of exception has not been effective at curtailing gangs, et cetera. And as to the question, Your Honor, regarding whether or not gangs would find out, at JA 575, one of the reports suggests that a strategy of internal relocation is implausible and, depending on the situation, even impossible simply because those they are fleeing learn of their whereabouts. This was evidence that was on the record. The record goes on at JA 592 to state that, for example, if one's fleeing MS-13, they cannot relocate to another MS-13-controlled area, which by definition may involve moving to a different gangs-controlled zone. And in fact, am I remembering the record correctly that when he did move from where the brother's business had been to where his sister lived, they found him there? Correct. And in fact, they found him once he did try to move. He testified that he moved within hours of each other at several different times while he was in Honduras. Even once he came to the United States, he was contacted by gang members. His sister was contacted by gang members after he left, referencing him as well as her children and the nieces of the second brother that died. And also he described gang activity that occurred to him or his family in quite diffuse parts of Honduras. His first brother murdered, I believe it was 2014, in one department of Yoro. His second brother murdered in the department of Cortez in 2018. His sister threatened by MS-13 at her home in yet another part of Cortez, and then he was working in San Pedro Sula, the capital of that department, when he was approached by gang members. So the record is just replete with instances in his own personal circumstances of him attempting to relocate and the government not being able and willing to protect them. We concede that the police showed up to the murder of both of his brothers. That is certainly true. But the futility exception cannot be reasonably interpreted to mean that police are effective and protective when they show up when somebody is already dead and take pictures. Our position, the petitioner's position is that having reported to the police would have been futile for that very reason. His personal experience, as well as all of the country conditions, established to him that they are unable to protect him because his brothers were murdered. His sister is in hiding, and his sister-in-law, the wife of one of his deceased brothers, had to flee after she made a report to the police. So there is a great deal of evidence on the record, substantial evidence that shows that the petitioner did meet his burden to show that the government of Honduras was able and unwilling. I mentioned some of the country conditions evidence, as well as some of his testimony that was disregarded. I would also note that the immigration judge and the BIA didn't shift the burden to DHS, to the Department of Homeland Security, to the government in this case, as it relates to the state of emergency. A great deal of the immigration judge's decision, and then the BIA as well, was focused on events or government circumstances from December of 2022, the state of exception in Honduras. Of course, that was three to four years after the persecution and having fled Honduras. And so those facts should not have been relevant as to whether or not the government was able and willing to protect him at the time of his persecution, and rather, the burden should have shifted to the government to show that circumstances had changed as it relates to the state of exception. I would also note that the Board of Immigration Review in, pardon me, the Board of Immigration Appeals, in reviewing the IJ's decision as it related to unable and unwilling, and the contention by Mr. Ramos Marquez that the immigration judge failed to consider whether or not it would have been futile, the board, instead of correcting that legal error, instead of saying there is no per se reporting requirement, rather they engaged in impermissible fact-binding by concluding, and I quote, that Mr. Ramos Marquez has not shown that reporting such harm would be futile or subject him to further harm. That was a finding that the IJ never made, and it was impermissible for the BIA to have engaged in that finding, and rather, they should have rested on the fact that the immigration judge failed to consider this court's precedent in Oriana v. Barr as well as Portillo v. Flores v. Garland as it relates to those exceptions when an individual cannot report. I would also note that not only would it have been futile, and is there evidence that it would have been futile, including his own testimony, his experiences of his brothers, but as Your Honor pointed out, it would have also subjected him to further harm, and there was evidence on the record of that as well. He testified that one of the gang members told him that they will find him wherever he goes throughout the country and that they govern the country. He also testified credibly that gangs figure out when you report something to the police, and that was his family's experience. His sister made a report after the death, or pardon me, his sister-in-law made a report after the death. And it's also borne out in the country condition evidence that you mentioned a bit ago. Most certainly, yes. And Mr. Ramos Marquez argues that it was legal error for the judge to have quite wholesalely ignored the country conditions evidence submitted by him before the court. In fact, the IJ cited two articles, I believe, submitted by the Department of Homeland Security. The petitioner submitted over 400 pages of country conditions reports. With respect to the futility question, haven't we found futility in a situation like, I guess it's the Hernandez case or somewhere. There had been evidence that had been brought about persecution, and the authorities did not respond at all. Generally, when we found reporting to be futile, there's been some history of authorities not responding to earlier evidence. And I wonder if you have that here. Yes, Your Honor, I think we do have that here. I think it's futile when the police show up after his family members were already killed, and take photos, and refuse to get involved in investigation. I think that's futile. What I'm wondering about it is a lot of the case tends to appear, tends to revolve around the sister and the brother's fate. The sister had actually, as I understand it, filed a report, but she was never harmed. That representation was made that she was not harmed. I guess that she filed a report, but then had to go into hiding, and has been in hiding ever since. So why would it have been dangerous in some way to have reported the problem to the authorities if the sister had filed a report and suffered no harm? That's an indication that reporting might have been beneficial. I realize that under our precedent, we have decisions that say you're not absolutely required to report. But on the other hand, it's very beneficial to your case had you reported and had the authorities done nothing. And you say, well, it's all futile, or dangerous. Either one. It could be both. But here, the sister was not harmed, and she did file a report. So that would seem to argue that filing a report would have been a good idea, at least to give the authorities a chance. But they weren't ever given a chance. Well, I suppose I would respond to that in a few ways. First, as you noted, the requirement in Oriana V. Barr and Portillo Flores is that it's either futile or she would be subjected to harm. Certainly in the sister's case, it has been futile. She made the report, no investigation began, and she's had to go in hiding as a result. They didn't open an investigation, they didn't offer to protect her, et cetera. So for her, perhaps it didn't subject her to harm. Well, it didn't subject her to physical harm, but to have to be in hiding is harm. It's a liberty interest in your ability to live where you like to live, et cetera, but also it certainly was futile. But then perhaps drilling down a little bit, stepping away from the sister, for this petitioner, for Mr. Ramos Marquez, the immigration judge was required to engage in some fact-finding about whether or not it was futile or would have subjected him to harm. And she did not. So had the immigration judge engaged in some amount of fact-finding about the futility or whether it would have subjected him to harm, this case would be different, but she didn't. And we can distinguish this from other cases where the futility exception, where this court has found that there was substantial evidence supporting a finding that the futility exception was not met. For example, in Marvin A.G. v. Garland, I think 2023, there was testimony in that case that police came to the scene, witnesses refused to help, the family refused to engage with the police, they attempted to come back several times, et cetera. That wasn't the case here for this family history. So it's distinguishable from those cases. And rather, it's more similar to Portillo Flores v. Garland in which their immigration judge failed to, and I quote that decision, provide specific cogent regions regarding futility and future harm. And that was the failure here. So at the very least, this should be remanded so that the immigration judge can engage in that kind of fact-finding. But I would argue that the record compels a determination that, in fact, there was that evidence on the record. Specifically, the breadth of his testimony, which was found to be credible about why it is he could not report to the police or doing so would have been futile. And then, of course, the hundreds and hundreds of pages of country-conditioned evidence, which supported the same. So you would not object to a remand to have the I.G. make the findings with respect to the I.G. and with respect to whether it would have been futile or dangerous to report. I certainly wouldn't object to a remand. And I do think there was a great deal of fact-finding that was not made on this record. Yeah, but if you think the I.G.'s findings were deficient in some way, you think a remand would be helpful? I do think that the I.G.'s findings were deficient. The petitioner's position is that there is sufficient evidence on the record which would compel a conclusion. But at the very least, I think remand is appropriate because of the areas in which evidence was disregarded, distorted, as well as country-conditioned. What you're petitioning for, that we grant the petition, aren't you? Yes, Your Honor. You haven't changed that, have you? I have not. Thank you. One of the things with respect to the brothers' murder, I don't think anybody ever provided the names or the description of the perpetrators. So it would be difficult, would it not, to find the perpetrators of the brothers' murder if the authorities possess no information? Well, I think the more appropriate question is whether or not the Honduran police asked for a description of the perpetrator. The evidence shows that they didn't engage in any sort of investigative behavior whatsoever. But hopefully something is provided. What I'm getting at is there are a whole lot of crimes, unfortunately, very unfortunately, that authorities in the United States fail to solve. And that's very regrettable. We would all think that. But the fact that they're unable to solve the crimes, it doesn't mean that they're unwilling or unable. Crimes can go unsolved simply because you don't have the evidence or whatever to solve them. Regrettably, but it doesn't mean that the government of some city or state or what have you is unwilling or unable to do it. It just couldn't be done in light of what they had before them. You don't want them picking up the wrong people. Absolutely, Your Honor. I agree with that contention wholeheartedly, but that's not what I'm asking the court to find. And in this case, it wasn't a question of whether or not they were able to solve. They didn't try to solve. So certainly the futility exception is not met just when they don't solve it. We're asking them to find that in this case there was facts on the record showing that Mr. Ramos Marquez, it was reasonable for him to believe it would have been futile. The thrust of your argument was that the fact finding was deficient. And one of the deficiencies went to the question of whether or not it would be, whether or not the failure to file a report could be excused. And then your response to that was logically enough. It could be excused if it was futile or if it was dangerous. Either one of those. And your view is that on those crucial matters, there was no fact finding. The I.J. simply overlooked it. Well, I think even before we get to whether or not the I.J. engaged in fact finding, she applied the incorrect legal standard. She stopped at there was no report, period, and it didn't engage further. Okay, well, why not get the fact finding on the question of futility or dangerousness since that was the omission? And you say a remand to look into those questions would be agreeable to you. Well, I understand that's one remedy that this court can provide, but I think, as I indicated in the petition, that there is sufficient evidence on the record which compels a decision on the merits in this case. But if your position is that the fact finding was inadequate, it might be a little bit difficult for us to affirm with just no further questions asked. If there was no adequate fact finding, that's not something that we do in this context. Surely. Well, I think perhaps instead of there not the representation of the petitioner's position being that the fact finding was inadequate, I mean, I think it was, but is that the immigration judge distorted and disregarded testimony. There was evidence on the record regarding futility and harm, but the judge refused to engage with it, as did the BIA. And so rather than there not being sufficient evidence on the record, the issue is that the immigration judge, in violation of this court's precedent, which requires that she meaningfully engage with the evidence, she disregarded it wholesale, as well as the country conditions report. So perhaps it's a better statement of the petitioner's position that the immigration judge failed to engage with the facts that were on the record. Thank you, Judge Gregory. Thank you very much, Your Honors. Mr. O'Connor, if you're familiar. Thank you, Your Honor. Good morning. I am Blair O'Connor, on behalf of the Attorney General. Your Honors, the record evidence in this case fails to compel a conclusion that the Honduran government would be unwilling and unable to protect the petitioner from the MS-13 gang if returned to Honduras, or that would acquiesce in any torture inflicted by the gang, such that his application for withholding removal and protection under the torture convention was popularly denied, and this instant petition for review should be denied. Now, first I'd like to address the argument about, my colleague's argument about that the IJ never engaged in the futility analysis. Our position is that she's failed to exhaust that argument, because her brief to the board specifically had a section that addressed futility. And if the IJ never made that determination, then it begs the question, why was she arguing that? That argument was not exhausted to the board, and therefore this court should decline to address it. But if it does address it, we would argue that the IJ did make a futility finding. Her decision specifically cited to this circuit's precedent regarding that there is no per se reporting requirement, and that an alien need not report if it would be futile or subject the alien to additional further harm. And so the IJ's decision did address that, and the board was properly to address it when it was before it, because that was specifically argued to the board, and they made a determination regarding that. Contrary to petitioner's assertion that the agency erred in failing to shift the burden of proof to DHS, he always bore the burden of proof given his failure to establish past persecution. Now, the IJ did find that he suffered harms which rose to the level of persecution, and that it was inflicted on account of his membership in a cognizable family-based social group. Where he failed was that he failed to show that the past persecution was inflicted by actors that the Honduran government was unable or unwilling to protect him from. And we would argue that substantial evidence does support that determination. In particular, he failed to report either the June or December 2018 personal attacks on him by the MS-13 gang. And that evidence, combined with the evidence that the police did respond to both of his brother's murders, and, you know, with respect to the first brother's murder, there were no witnesses. So there wasn't much the police could do with that. With respect to the second brother's murder, there was one witness, which was his wife, and the police showed up at that crime scene, they took pictures, and they questioned the wife. Now, that wife understandably fled soon thereafter, so the police really couldn't do any further follow-up, because she was no longer in the country. The people who committed the murders were masked. There were no descriptions. So as Judge Wilkinson pointed out, this is very regrettable. But didn't you say they interviewed the wife? They showed up and interviewed. So what other follow-up did they need to do with her? They need to follow up and find who did this. They already interviewed her. I understand that, Your Honor, yes. But they did have, they had, the individuals were masked. There was no description. I'm just saying that there wasn't much for the police to go on there. And if they did have follow-up questions, she was no longer in the country. And so that is evidence that this police are making efforts. They're showing up at the crime scenes. They're taking pictures. They're doing the best they can. But, you know, crime unfortunately happens, you know, in every country in the world, and we can't solve every crime. So... Petitioner did testify that the Honduran government would not protect him because it was corrupt. And we recognize that corruption has been historically a problem in Honduras. But such a self-serving generalization by itself is insufficient to show a government unable and unwilling to protect. In particular, both the immigration judge and board did note that in December of 2022, the Honduran president implemented a state of exception and that it was having some effect. Now, this state of exception was not nearly as sweeping as a Salvadorian state of exception, but President Castro recognized that the Salvadorian state of exception is occurring at a human rights expense. And so she was much more measured in the state of exception that Honduras imposed. It was not perfect. It was not entirely effective. But the government present day is making attempts to control the gangs. In the first month of the state of exception alone, 39 criminal gangs were defeated and over 100 arrests were made of gang members. That number has increased to 600 arrests in the ensuing months. So, Your Honor, the government argues that that is some evidence that present day, if respondent is returned, efforts are being made to combat the gangs. And that does not show a government's inability or unwillingness to protect this petitioner from the MS-13 gang, which is his persecutor. So the futility inquiry would go directly to that point, would it not? Yes, Your Honor. Yes, Your Honor. One of the questions we have is about the conditions generally in Honduras. And I think that the futility argument would be the IJ would be free on remand to explore general conditions in Honduras in answering whether reporting would have been futile. Is that correct? Yes, Your Honor. But our threshold argument was that the court need not remand because... Your argument is to deny the petition outright. Yes, Your Honor. I mean, again, we believe that the board and the immigration judge did provide sufficient reasons to show why there was not government inability or unwillingness. Yes, Your Honor. The Supreme Court's decision in Cardozo-Fonseca says that you uphold the agency here unless no reasonable decision maker could have concluded what the agency did. And that's a much stronger standard than the abuse of discretion standard or what have you. It says, you know, you have to uphold a decision unless the record is such that no reasonable decision maker could have come out the way the IJ and BIA did. There is no stronger standard of review. It's certainly above abuse of discretion and probably above clearly erroneous as well. By all means, Your Honor. Again... This is a very, very high bar. And it has to be dealt with. Yes, Your Honor. Again, substantial evidence means the record must compel the conclusion that the Honduran government does not meet that very, very high standard. To briefly address the argument made that the immigration judge erred by considering evidence of the state of exception in the past persecution analysis, again, we would argue that's an argument that has not been exhausted before this court, and therefore the court should decline it. In his brief before the board, the petitioner solely argued the merits of whether or not the evidence regarding the state of exception would show that the efforts are currently being made. At no point did he argue before the board, hold on, wait a minute, the IJ erred in considering that evidence in the past persecution analysis. Therefore, the board never had an opportunity to even address it. That's why it's not addressed in the board's decision. That precludes this court's not recognizing the Supreme Court precedent that exhaustion is not jurisdictional, but it is mandatory. And we're asserting it, we asserted it in our brief, and we'd argue that this court should decline to address that argument because it wasn't presented to the board. I understand that your first preference by far is to deny the petition, and that you have given some decent arguments in terms of the standard of review and in terms of the reporting requirement. And the fact that they were addressed or not exhausted. But would you object to a remand? To ask the same question of the opposing counsel, would you object to a remand that would allow the IJ and the board to explore the question of futility of the remand? Respectfully, I know we would. I mean, even if the court were to find that there is problems with the government, able and willing, there is the alternative basis that the agency ruled upon was that petitioner failed to show that he could not reasonably internally relocate within Honduras. Again, all the incidents with respect to him occurred in the Department of Cortez. You're not answering my question. I asked you whether you would object to a remand simply to give the IJ an effort to ask whether reporting would have been futile or dangerous. And in the course of that inquiry, you would get into the question of whether the Honduran government was making adequate efforts to control gang activity in Honduras. And wouldn't we be on sounder ground maybe if we could have findings on that point made to assist us in our inquiry? My apologies for not answering your question, Judge Wilkinson. We would object. And again, the reason we would is because there are two grounds for denying relief here. One was the government unable and willing, and the other one was internal relocation. That's an independent reason to deny these applications for relief. The other one was what? Internal relocation. That is an independent reason to deny both of these applications for relief. That's not what it seemed to me. Your brief is an argument that you put most of your eggs in the basket of unwilling or unable. We did because that's how it was briefed, which we were responding to. My opponent's brief went to the government unable and unwilling. But internal relocation is an independent reason for denying both of these applications for relief. And we would argue that that is also supported by substantial evidence, the internal relocation determination. So even if you were to find problems with the government unable and willing, you need not remand because you can deny the petitions on the internal relocation finding. And with respect to that, again, everything that happened to this petitioner happened in the Department of Cortez. No, it did not. It did not. He moved to Cortez. He moved within Cortez. He moved within the department, Your Honor. But he did move. All right. Well, he did try to move after the gang members approached him asking about his brother, demanding that he pay off his brother's debt and physically assaulting him. And then he did move and was still accosted by the gang members, as was his sister, even after he moved to the United States. So if moving to the United States doesn't stop the threats, I don't see how relocation anywhere in Honduras would not have been futile. I understand your point, Your Honor. But again, he moved in with his sister, Rosa, and that was within the same department. Honduras has, I think, 18 different departments. He was about 30 minutes away from the area he had been living and working in, correct? Yes, Your Honor. True. Now, when he was living with his sister, the gangs never came to her house. They only came to the house after he had left Honduras. So that is an important point we want to make, that he was safe with his sister while he was living with her, as long as he was in her house. Now, granted, he went back to the place. As long as he didn't leave the house? Well, Your Honor, he went back to the place of business where his brother had the business. And that's where both the attacks occurred near that business. The fair in June of 2018, and then the second attack in December of 2018. But we would note, again, that there was no attempt to move to a different department in Honduras. And the first brother's death, while that did occur in a different department, petitioners conceded on his brief before this court that the first brother's death was completely unrelated to all of his problems with the MS-13 gang and the second brother's problems with the MS-13 gang. The first brother's death had to do with the fact that he was dating a woman who was, her family member was a gang member. Not the second brother's death. Yes, but my point is that the only thing that happened outside the department of Cortez was the first brother's death. And they've conceded that that was unrelated. So it's not really relevant to the internal relocation. But the second brother's death was related. It was, yes, Your Honor, yes. Because they were in the same business together. He was working with his brother. And that's the business that they threatened petitioner that he needed to pay the debts of his brother. Yes, Your Honor. His brother at that time was alive. He refused and the brother was killed and they're still threatening petitioner. Yes, Your Honor. But again, none of these threats, none of these were reported at any time to the police. So the police were never given an opportunity to try to do anything about this. And in the present day, again, we rely on the evidence regarding the state of exception. Efforts are being made in Honduras to combat gang violence. They are taking steps to do this. It's not as expansive as what's going on in the neighboring country of El Salvador. But again, the current president of Honduras recognizes that those are occurring at a significant human rights expense. And so it's a much more measured response. But it is having an effect. Gangs are being eliminated. Hundreds of people are being arrested. And steps are being taken. You've given us these representations. Isn't that a matter that's better dealt with with a fact finder? Well, the IJ did note, the immigration judge did take note of what's happening under the state of exception. He noted that in the first month of it, 39 gangs were eliminated and over 100 arrests were made. So this is fact finding that has already been made. And our position would be that this court need not remand because we have sufficient facts. Could there have been more? Perhaps. Could there have been more said about it? There always could be more that could be said. But immigration courts have an enormous backlog. And so the IJs do the best they can. And our position is this IJ and the board did enough for this court to deny the petition for review. The attorney general would have ultimate discretion on the question of withholding of removal? Withholding is not a discretionary application like asylum. So if the eligibility is satisfied, then relief is mandatory. What about the asylum claims? That are discretionary, yes. On asylum claims, the attorney general has ultimate discretion. One thing that's always interested me is why in the world do we necessarily go through a law, maybe that's not the case in a withholding case, but in an asylum case, why do we go through these law-involved appellate court proceedings if the attorney general is not going to grant asylum in any case, no matter what we decide, because the attorney general can counter-ban what we're doing in an asylum case. Why not do it earlier? Why not do it earlier before the Court of Appeals goes through the considerable effort? I mean, judges have made this complaint off and on. But it would be helpful if the attorney general was saying, there's no way in the world I'm ever going to grant this asylum case. Just let us know, okay? I will take that back to my client, Your Honor. But as someone who's actually served two brief stints as an immigration judge, it's a really hard job. There's an enormous caseload. You try to cover as much as you can in the decision, but they're not going to be perfect, just because of how many cases you have to get to. But again, it's an excellent point, Your Honor. I will take that back to my client. Lastly, I just want to briefly talk about the torture convention claim. The board did not resolve the torture convention claim on the first prong of whether or not the petitioner established a clear probability of torture. So that issue is not before the court. The board solely denied Catt for the failure to show government acquiescence. And again, our argument is that substantial evidence does support that determination. No reports were made to the police on any of the assaults of the petitioner in this case, so they never had an opportunity to reply. There is evidence that they did respond to the two brothers' murders. They took a report from the sister. With respect to the sister, she left the country, as did the second brother's wife. So once she left, there wasn't much the police could do to follow up on that. When she was returned, she did go live with the uncle. But there is evidence of the police doing something, especially with the state of exception. So we would ask that the torture convention claim also be upheld. So barring any further questions from the court, we would respectfully deny that the petitioner for review be denied. Thank you, Your Honors. Thank you, Your Honors. Thank you. Ms. Soltis, do you have some rebuttal time? I'm pleased to hear from you. It's quite a heavy binder there. May it please the court. First, I'll address opposing counsel's contention that the futility issue is not properly before this court. Before both the Board of Immigration Appeals and before this court, the petitioner properly brought up the issue that the immigration judge failed in her analysis as to whether the Honduran government was unable or unwilling to protect the petitioner. Chief among those errors was the immigration judge's requirement that the petitioner report. And we addressed this issue on page J.A. 29 to 30, and then again brought the issue before this court. And additionally, in Ramirez v. Sessions, this court has held that administrative exhaustion does not bar a petitioner from making, quote, more specific and nuanced points. So although we provided additional arguments as to why the immigration judge erred in implementing this per se reporting requirement, it was also properly before the board. And additionally, in Portillo v. Flores, this court held that if a board addresses an issue sua sponte, then the claim is properly exhausted. And here the board did make an impermissible factual finding, but he did make a finding about futility and whether reporting would have exposed the petitioner to harm. So again, those issues are properly before the court. Next I'll turn to opposing counsel's discussion of the state of exception. Several of the representations made were not at all in the record, and his contention that the immigration judge concluded that 39 gangs were destroyed and that there were hundreds of arrests, none of that is in the immigration judge's decision. Perhaps if it was, we wouldn't be here today. Again, the issue here is that the immigration judge entirely failed to engage with the country conditions reports. She entirely ignored the petitioner's testimony. And time and again this court has said that although the substantial evidence standard is deferential, it's also legal error for an agency to distort evidence, to disregard evidence, to ignore testimony that is otherwise found to be credible. So here, perhaps if the immigration judge had actually engaged with the evidence about the state of exception as the opposing counsel was bringing up, we wouldn't be here today. But instead the immigration judge did not mention key parts of petitioner's testimony and instead only quoted cherry picking one quote that there had been, quote, some arrests, when that very paragraph goes on to say that the state of exception is ineffective because gang members are only changing the way that they're extorting people rather than actually having extortion be diminished at all. So here we're not only asking for this court to review under the substantial evidence standard, but also finding that it was an abuse of discretion for the agencies to entirely disregard such important parts of the record. One of these I.J. decisions, I think your opposing number alluded to them. I wouldn't like to be an I.J. because we pick apart in such minute detail what an I.J. did. We defer to district courts, but we don't apply nearly the kind of fine, granular review that we do on these I.J. decisions. It would be hard to be an I.J. because no matter what you do, you can't do everything right. And there's always picking and picking. And the question is, does the most intensive review belong in a context where the Supreme Court has set forth the highest standard of review? There's an odd disconnection between the way in which we picket I.J. decisions, as I say, far more than with district court decisions. And we do this where the Supreme Court says an agency's conclusion must be affirmed, unless any reasonable adjudicator would be compelled to conclude to the contrary. And so I fear that that's what we're doing here. But you would, as your colleague has indicated, that she might be open to a remand that discusses the futility requirement and the question of whether it would be futile or dangerous to file a report. It seems one way to resolve this case. Yes, thank you, Your Honor. We would be open to a remand, and I do recognize that it is a deferential standard, but I think that this Court put it really aptly in, I believe, Rodriguez-Arias, that when a man's life is on the line, he deserves to know that his evidence was fully considered and looked at. And so rather than picking apart a decision where we are asking for the evidence to, you know, in the very least, be properly considered rather than entirely ignored. But you have not changed your request for granting the petition, have you? No, Your Honor. Thank you very much. This honorable court is adjourned until tomorrow morning at 8.30.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Stephanie D. Thacker